**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DAVID K. VANCO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 19 C 6132 |
| | ) |
| VINCENT MANCINI, MADDY | ) Judge Joan H. Lefkow |
| ROSSOBILLO, CHICAGO FLAMEPROOF | ) |
| AND WOOD SPECIALTIES CORP., | ) |
| NORTHERN ILLINOIS LUMBER | ) |
| SPECIALTIES CORP., and MADISON | ) |
| L.L.C., | ) |
| | ) |
| Defendants. | ) |

## <u>OPINION AND ORDER</u>

David K. Vanco sues Vincent Mancini, Maddy Rossobillo, Chicago Flameproof and

Wood Specialties Corp. ("Chicago Flameproof"), Madison L.L.C. ("Madison"), and Northern

Illinois Lumber Specialties Corp. ("Northern") for shareholder oppression (Count I), refusal to

permit examination of corporate records (Count II), breach of fiduciary duty (Count III), breach

of contract (Count IV), and a shareholder derivative action (Count V). All defendants move to

dismiss. Northern's motion (dkt. 54) is granted as unopposed. Chicago Flameproof's motion

(dkt. 53) is denied. Madison's motion (dkt. 53) is granted. Mancini and Rossobillo's motion (dkt.

58) is granted in part and denied in part. The following claims will proceed:

I.    Vanco may proceed against Mancini, Rossobillo, and Chicago Flameproof for

shareholder oppression. Madison is dismissed without prejudice.

II.    Vanco may proceed against Chicago Flameproof for refusal to permit examination of

corporate records. Mancini and Rossobillo are dismissed without prejudice.

III.    Vanco may proceed against Mancini and Rossobillo for breach of fiduciary duty.
        Madison is dismissed without prejudice.

IV.     Vanco may proceed against Chicago Flameproof for breach of the bylaws but not the
        shareholder agreement. Mancini, Rossobillo, and Madison are dismissed with prejudice.

V.      Vanco may proceed derivatively on behalf of Chicago Flameproof against Mancini and
        Rossobillo, though he must amend his complaint to comply with Rule 23.1 by November
        9, 2020.[1]

## BACKGROUND[2]

Vanco was one of the original shareholders of Chicago Flameproof, a closely held lumber-treating business, incorporated in 1991. (Dkt. 49 ¶ 25.) Vanco loaned Chicago Flameproof $610,000 on favorable terms, which Chicago Flameproof used to buy the existing lumber-treating business of another company. (*Id.* ¶ 19–20, 28.) In connection with his early financing efforts, Vanco was permitted to purchase 160 of 1000 total shares of common stock for $1 per share. (*Id.* ¶¶ 18, 25.) Mancini and Thomas Schude had 370 shares each, and John Janssen (now deceased) had 100 shares. (*Id.* ¶ 25.)

The four original shareholders signed a shareholder agreement that restricted the transfer of shares. Under the agreement, "no shares of the Stock shall be transferred by a shareholder to any person or entity other than a Permitted Transferee unless such Shareholder" first offered the corporation or other shareholders a chance to purchase the shares. (Dkt. 49-1 Exh. D § 3(a).) The

---

[1] The court has jurisdiction under 28 U.S.C. § 1332. Vanco is a citizen of Florida, all defendants are citizens of Illinois, and the amount in controversy exceeds $75,000. Venue lies under 28 U.S.C. § 1391(b)(1) because all defendants reside in this judicial district.

[2] The facts are taken from Vanco's complaint and are presumed true for this motion. *Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011).

2

agreement defined "Permitted Transferee" to include "Each of the Shareholders." (*Id.* § 2.) The agreement also provided a procedure for valuing shares. (Dkt. 49 ¶ 44.)

Under the shareholder agreement, all new Chicago Flameproof shares had to be subject to the share restrictions in the shareholder agreement. (*Id.* ¶¶ 38–39.) Vanco concludes from this provision that Chicago Flameproof had to offer its existing shareholders a right of first refusal to purchase any newly issued shares, which he calls the "anti-dilution provisions." (Dkt. 49 ¶¶ 77–83.) But there are no anti-dilution provisions in either the shareholder agreement or the Chicago Flameproof bylaws. (Dkt. 49-1 Exh. A, Exh. D.) Rather, the bylaws permitted the directors to authorize officers to enter contracts and deliver any instruments without limitation. (Dkt. 49-1 Exh. A Art. V § 1.) The president was given authority to issue share certificates. (*Id.* Art. VI § 1.) Although new shares had to be subject to the original shareholder agreement's transfer restrictions, current shareholders did not have a right of first refusal to purchase newly issued shares. (Dkt. 49-1 Exh. D §§ 7–8.)

The shareholder agreement and bylaws of Chicago Flameproof effectively placed Mancini in unfettered control of Chicago Flameproof for life. (*Id.* ¶ 24.) Under the shareholder agreement, Mancini was to be a director and CEO for as long as he wished. (*Id.* ¶ 23.) Mancini, Janssen, and Schude—together controlling 83% of the original shares—mutually agreed and bound their successors to vote for themselves as the only three directors of Chicago Flameproof indefinitely. (Dkt. 49-1 Exh. D § 4(a).) They further agreed that, as directors, they would vote for Mancini as CEO every year. (*Id.* § 5(b)(3).) Mancini was also to serve as President. (*Id.* § 5(b)(4).) Mancini thus would control all day-to-day operations of Chicago Flameproof as both a director and an officer, with minimal restrictions on his power built into the bylaws. (Dkt. 49 ¶ 23.)

Since Vanco's initial investment, Mancini froze Vanco out of the business and arrogated more power and control to himself by increasing his stake as a shareholder. The Chicago Flameproof bylaws require annual shareholder meetings with advance notice. (*Id.* ¶ 37.) Yet Chicago Flameproof has not called or held an annual shareholders' meeting since 1995. (*Id.* ¶¶ 45–46.) Nor has Chicago Flameproof called any special meetings of shareholders. (*Id.* ¶ 46.) Though Vanco has never had a large enough stake to call a special meeting himself, he and Schude called one together in 1994. (*Id.* ¶ 119.) At that meeting, Vanco and Schude, together with 53% of shares at the time, passed a resolution requiring an independent audit of Chicago Flameproof, which Mancini ignored. (*Id.*)

Throughout his tenure at Chicago Flameproof, Mancini has issued many new shares, diluting Vanco's stake. Without notice to Vanco, at some point, Madison—an LLC that Mancini, Rossobillo and Janssen formed in 1997—purchased 950 new shares in Chicago Flameproof for $475,000. (*Id.* ¶¶ 56, 64, 73, 82.) Vanco would have been willing to pay more, and no one investigated alternative investments that would have preserved existing shareholders' equity. (*Id.* ¶¶ 76–77, 79, 81.) Vanco also alleges on information and belief that Madison's stock was not subject to the shareholder agreement. (*Id.* ¶ 75.) By 2014, Mancini had increased his own stake from 370 shares to 2,020, plus effective control of Madison's 950 shares, while Schude and Janssen disappeared from the shareholder rolls, and Vanco's shares stayed constant. (*Id.* ¶ 61.) Vanco claims that he never received notice of any issuances or transfers of shares, though, as the rolls reflect, the transfers must have occurred. (*Id.* ¶ 66.) Again, however, Vanco's exhibits contradict his complaint; he attaches a letter faxed to him in 2000 notifying him that Chicago Flameproof was buying back Janssen and some of Rossobillo's stock. (Dkt. 49-1 Exh. F.)

After these issuances and transfers, Chicago Flameproof has four shareholders. (Dkt. 49 ¶¶ 17, 19–20, 31.) Mancini is the majority shareholder with 2,020 shares. (*Id.* ¶ 6.) Rossobillo, who is also currently Vice President of Chicago Flameproof, owns 50 shares. (*Id.* ¶¶ 7, 14.) Madison owns 950 shares, and Mancini and Rossobillo are now Madison's sole members. (*Id.* ¶¶ 10, 16, 18.) Vanco remains a minority shareholder, with 160 shares. (Dkt. 49 ¶¶ 5.)

Vanco alleges that Mancini and Rossobillo have used their supermajority status to drain funds from Chicago Flameproof to the detriment of the corporation and its shareholders. (*Id.* ¶¶ 52–55, 89–90.) Mancini and Rossobillo caused Chicago Flameproof to pay them between $500,000 and $700,000 in combined salaries per year. (*Id.* ¶ 53.) They also borrowed from Chicago Flameproof and owe it over $300,000. (*Id.* ¶¶ 54–55.) And despite earning tens of millions of dollars in revenue, Chicago Flameproof has not paid a shareholder dividend since 1991. (*Id.* ¶¶ 51, 89.) Vanco also alleges that since the very beginning of Chicago Flameproof, Mancini and Rossobillo have owned Northern, a competing lumber-treating business, and diverted some potential Chicago Flameproof business to Northern. (*Id.* ¶¶ 108–13.) He "suspects" that Chicago Flameproof and Northern commingle assets. (*Id.* ¶ 115.) Vanco further claims that Mancini has hired his family members as "phantom" employees, which the court infers from context to mean that they are paid from Chicago Flameproof funds but perform no work for Chicago Flameproof. (*Id.* ¶ 132.)

Vanco had discussions with Mancini and Rossobillo at various points to buy out his stake in Chicago Flameproof. (Dkt. 49 ¶ 102.) In 2000, Chicago Flameproof offered to repurchase Vanco's shares for $250,000, but apparently the parties did not close the deal. (Dkt. 49-1 Exh. F.) To assess the value of his shares while negotiating the possible buyouts, Vanco made two clusters of requests to examine corporate records: one in 1998, and one in 2018. (Dkt. 49-1 Exhs.

B, E.) In 1998, Vanco requested twelve broad categories of records "to protect my interests and the interests of my family" (dkt. 49-1 Exh. E) and claims that Chicago Flameproof never responded. (Dkt. 49 ¶ 105.) In 2018, for the stated purpose of valuing his shares, and to investigate "whether the acting president, Vincent Mancini, has engaged in wrongdoing," Vanco requested essentially every record that Chicago Flameproof had ever produced. (Dkt. 49-1 Exh. B.) Although Vanco claims that Chicago Flameproof "failed to comply with the information request," (dkt. 49 ¶ 68), yet again, Vanco's exhibits contradict his complaint. Chicago Flameproof, through its attorney William J. Arendt, in fact provided three years of financial statements and tax returns to Vanco in 2018, which it supplemented in 2019 after filing its 2018 tax returns, and objected in writing to the scope of his remaining requests. (Dkt. 49-1 Exh. C.)

Vanco now sues Mancini, Rossobillo, Chicago Flameproof, Madison, and Northern. (Dkt. 49.) His second amended complaint raises five claims:

1.  Shareholder Oppression under 805 Ill. Comp. Stat. 5/12.56 (against Mancini, Rossobillo, Madison, and Chicago Flameproof)

2.  Refusal to Permit Examination of Corporate Records under 805 Ill. Comp. Stat. 5/7.75(c) (against Chicago Flameproof, Mancini, and Rossobillo)

3.  Breach of Fiduciary Duty (against Mancini, Rossobillo, and Madison)

4.  Breach of Contract (against Mancini, Rossobillo, and Madison)

5.  Shareholder Derivative Action (on behalf of Chicago Flameproof against Mancini, Rossobillo, and Madison).

All defendants move to dismiss the second amended complaint for failure to state a claim. (Dkts. 53, 54, 58.) Although Vanco names Northern in the complaint, he does not allege any claims against Northern and seeks no relief from it. He thus does not oppose Northern's motion to dismiss.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. In ruling on a Rule 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011); *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). This includes allegations made on "information and belief," where the information would be "peculiarly within another party's knowledge . . . ." *FirstMerit Bank, N.A.* v. *Ferrari*, 71 F. Supp. 3d 751, 757 (N.D. Ill. 2014). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also establish that the requested relief is plausible on its face. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009); *Bell Atl.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007). The allegations in the complaint must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. At the same time, the plaintiff need not plead legal theories; it is the facts that count. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010); *see also Johnson* v. *City of Shelby*, 574 U.S. 10, 135 S. Ct. 346, 346 (2014) (per curiam) ("Federal pleading rules call for a short and plain statement of the claim showing the pleader is entitled to relief; they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted.").

## ANALYSIS

The defendants respond to the complaint with their own story—Chicago Flameproof is thriving under Mancini and Rossobillo's prudent and fair management, but Vanco, an absentee minority shareholder, stirs up trouble about once every decade as he tries to sell his shares. This complaint, the defendants argue, is Vanco's latest foray out of the woodwork, nothing more than

an attempt to inflict pain on Chicago Flameproof and its officers to gain leverage in buyback negotiations. The defendants' story may eventually prove more compelling than Vanco's, but a Rule 12(b)(6) motion is not the right vehicle for it. For this motion, the court must consider only the factual allegations in the complaint and exhibits, assume that they are true, and view them in the light most favorable to Vanco. Under this standard, although the court narrows some of Vanco's claims and dismisses some of the defendants, all of Vanco's claims may proceed.

## I.      Shareholder Oppression (Count I)

"Minority shareholders are vulnerable to 'freeze-outs' or 'squeeze-outs,' where the majority, for personal rather than legitimate business reasons, deprives the minority shareholder of his office, employment, and salary. . . . Consequently, an oppressed shareholder in a close corporation may seek a judicial remedy, including dissolution of the corporation." *Rexford Rand Corp.* v. *Ancel*, 58 F.3d 1215, 1219 (7th Cir. 1995) (citations omitted). Under the Illinois Business Corporation Act, a shareholder of a privately held corporation is entitled to that and other statutory remedies if he can prove that

> [t]he directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal, oppressive, or fraudulent with respect to the petitioning shareholder whether in his or her capacity as a shareholder, director, or officer; or . . . the corporation assets are being misapplied or wasted.

805 Ill. Comp. Stat. 5/12.56(a)(3)–(4).

Although Vanco uses the words "fraudulent" and "illegal," his complaint alleges that the defendants took some perfectly legal actions like paying themselves salaries for their work as officers, incurring debt in Chicago Flameproof's name, and choosing not to pay dividends. Nor does Vanco plausibly allege misapplication of funds or waste. He claims expressly that corporate revenue grew from $46.9 million in 2017 to $55.9 million in 2018 and $56.3 million in 2019,

which hardly suggests arbitrary mismanagement. (Dkt. 49 ¶ 89.) Having failed to show fraud, illegality, or mismanagement, Vanco must show that defendants' conduct was "oppressive."

Though the Business Corporation Act "includes no definition of 'oppression,' and Illinois case law has not precisely defined the parameters of 'oppression,'" *Allen* v. *Park Nat'l Bank & Tr. of Chi.*, No. 96 C 2198, 1998 WL 299477, at *5 (N.D. Ill. May 29, 1998), Illinois courts have established contours of what it is not. "[P]roof of oppression does not require proof of unlawful or fraudulent acts . . . or proof that [the defendant] mismanaged or misapplied assets, or proof that disaster is imminent." *Id.* Moreover, "the absence of 'mismanagement, or misapplication of assets,' does not prevent a finding that the conduct of the dominant directors or officers has been oppressive." *Gidwitz* v. *Lanzit Corrugated Box Co.*, 170 N.E.2d 131, 135, 20 Ill. 2d 208 (1960). Thus, "[i]t is not necessary that . . . loss be shown to exhibit oppression of plaintiffs and their interest in the corporation." *Id.* at 138. Although oppression commonly involves terminating the minority shareholder's office or employment with the corporation, *see, e.g.*, *Hager-Freeman* v. *Spircoff*, 593 N.E.2d 821, 229 Ill. App. 3d 262 (1992); *Notzke* v. *The Art Gallery, Inc.*, 405 N.E.2d 839, 84 Ill. App. 3d 294 (1980), the Illinois Supreme Court does not require proof of such a loss. *Gidwitz*, 170 N.E.2d at 138. Although Illinois courts mostly define "oppression" in the negative, some courts offer an affirmative example: a plaintiff may show oppression by demonstrating an "arbitrary, overbearing and heavy-handed course of conduct . . . ." *E.g.*, *Compton* v. *Paul K. Harding Realty Co.*, 285 N.E.2d 574, 581, 6 Ill. App. 3d 488 (1972).

Vanco plausibly claims that he was oppressed because he was denied the opportunity to participate in the affairs of Chicago Flameproof. "The essential attribute of a shareholder in a corporation is that he is entitled to participate, according to the amount of his stock, in the selection of the management of the corporation, and he cannot be deprived or deprive himself of

9

that power. . . . [T]he minority of stockholders is not to be deprived of the opportunity of exhibiting their corporate desires and directives by the exercise of their right to participate in the election of directors." *Gidwitz*, 170 N.E.2d at 135. Vanco alleges that since 1995, Mancini and Rossobillo denied him that essential right by never calling a shareholder meeting or, if they have, never notifying Vanco. This alone states a claim for shareholder oppression. *Gidwitz*, 170 N.E.2d at 136 (finding that going ten years without an annual shareholder meeting "indicates a deprivation of shareholders' rights").

Defendants argue that Chicago Flameproof waived its requirement to hold shareholder meetings by not doing so for many years. "[A] corporation waives or abrogates a bylaw when it acts or contracts in disregard of the bylaw with the express or implied consent of the stockholders or board members." *Kern* v. *Arlington Ridge Pathology, S.C.*, 893 N.E.2d 999, 1005, 384 Ill. App. 3d 528 (2008). Mancini and Rossobillo must show that Vanco himself expressly or implicitly consented to disregard his shareholder voting rights. Although Vanco waited 24 years to sue, nothing in the four corners of the complaint shows whether Vanco ever objected. In fact, the only exhibit touching on this issue is Vanco's 2018 letter requesting records, in which he also stated, "Vanco does not waive notice of any corporate meetings . . . ." (Dkt. 49-1 Exh. B.) As Vanco notes in his response to the motion, waiver is an affirmative defense and is not a proper basis to dismiss the complaint under Rule 12(b)(6). (Dkt. 62 at 8 n.1.)

Vanco also plausibly alleges an arbitrary and heavy-handed course of conduct. The complaint alleges that after shutting Vanco out of corporate affairs, Mancini slowly arrogated more power to himself at Vanco's expense. Vanco made a $610,000 loan and was allowed to purchase 160 shares, then a 16% stake, for $160. (Dkt. 49-1 Exh. F.) Today, those same shares represent 5% ownership, and Chicago Flameproof's most recent offer to redeem Vanco's shares

valued them at only $250,000, significantly less than the $610,160 he put into the company in 1991. Mancini and Rossobillo argue that Vanco chose to finance the company primarily through debt instead of equity, and that his loan has already been repaid with interest. But the court cannot assume on a Rule 12(b)(6) motion that Vanco's loan was repaid, because the court must draw all reasonable inferences in Vanco's favor. *Active Disposal*, 635 F.3d at 886.

Moreover, regardless of how well Vanco's investment performed, there is evidence that Chicago Flameproof valued his shares lower than those of Mancini's friends. Chicago Flameproof accepted only $475,000 from Madison in exchange for 950 shares—at the time a 48.7% ownership interest, compared to Vanco's $610,160 for fewer shares and a smaller stake. And in the same letter outlining the proposed terms of Vanco's stock redemption, Chicago Flameproof planned to redeem shares from favored minority shareholders on better terms— $2,313/share for Janssen and Rossobillo, compared to $1,562.50/share for Vanco. (*Id.*) In short, the complaint plausibly alleges that Mancini used his position as CEO, chairman, president, and owner of a plurality of shares in 1991 to give himself, his confederate Rossobillo, and his own LLC a supermajority of shares, which diluted Vanco's shares and prevented Vanco from "sell[ing] his shares for any sum approaching their fair value." *Rexford Rand Corp.*, 58 F.3d at 1219. That was plausibly arbitrary and heavy-handed.

Finally, although Vanco names Madison as a defendant to Count I, Madison is, and has always been, a minority shareholder, and the complaint does not allege that it is a director of Chicago Flameproof. Because Madison neither controls Chicago Flameproof nor is a director, Vanco thus "consents to a dismissal without prejudice of Count I" with leave to add Madison as

11

a defendant if discovery demonstrates control. (Dkt. 63 at 6–7.)[3] Not content with the concession, in its reply brief, Madison asks this court to impose Rule 11 sanctions against Vanco. That request is denied.

Madison also argues that all dismissals should be with prejudice because this is Vanco's third attempt to state a claim. Although Vanco has amended his complaint twice, the first was not a substantive amendment but addressed a jurisdictional defect. (*See* dkts. 4, 6.) The court cannot yet conclude that future amendments would be futile.

Count I is therefore dismissed without prejudice as to Madison. The motion to dismiss Count I is denied as to Mancini, Rossobillo, and Chicago Flameproof.

## II.     Refusal to Permit Examination of Corporate Records (Count II)

Under the Business Corporation Act, "a shareholder of record shall have the right to examine . . . the corporation's books and records . . . but only for a proper purpose." 805 Ill. Comp. Stat. 5/7.75(b). The shareholder must state his purpose in a written records request. *Id.* "A proper purpose is shown when a shareholder has an honest motive, is acting in good faith, and seeks to protect the interest of the corporation." *ICD Publications, Inc.* v. *Gittlitz*, 24 N.E.3d 898, 922, 2014 IL App (1st) 133277 (2014). The purpose must be "specific" and cannot be "to gratify curiosity or for speculative or vexatious purposes." *W. Shore Assocs., Ltd.* v. *Am. Wilbert Vault Corp.*, 645 N.E.2d 494, 498, 269 Ill. App. 3d 175 (1994) (quoting *Doggett* v. *N. Am. Life Ins. Co.*, 71 N.E.2d 686, 688, 396 Ill. 354 (1947)).

The shareholder bears the burden of demonstrating a proper purpose to inspect books and records; the corporation bears the burden of demonstrating a lack of proper purpose if it refuses

---

[3] Rossobillo is also a minority shareholder, and Vanco does not allege that he is a director. But unlike Madison, Rossobillo does not argue in his motion to dismiss that he is not "in control" of Chicago Flameproof, and Vanco therefore opposes Rossobillo's motion.

inspection of "minutes or the record of shareholders or a voting trust agreement." 805 Ill. Comp. Stat. 5/7.75(c); *Munroe-Diamond* v. *Munroe*, 139 N.E.3d 630, 633–34, 2019 IL App (1st) 172966 (2019). "[A] mere statement alleging a facially proper purpose is not enough; rather, the facts and circumstances of the request and the relationship of the shareholder to the corporation must be examined to ensure that the true purpose of the request is not contrary to the best interests of the corporation." *W. Shore Assocs.*, 645 N.E.2d at 499. Once the shareholder demonstrates a proper purpose, it entitles him to "a total examination of all reasonably required books and records of the corporation." *Weigel* v. *O'Connor*, 373 N.E.2d 421, 428, 57 Ill. App. 3d 1017 (1978). If the corporation refuses a proper request, the shareholder may sue the corporation and any officers or agents who refused, both to compel examination and for damages. 805 Ill. Comp. Stat. 5/7.75(c)–(d).

Vanco claims that he made "numerous written requests" for corporate records. (Dkt. 49 ¶ 96.) He has evidence of two clusters of requests—one in 1998 and one in 2018 (continuing into 2019). (Dkt. 49-1 Exhs. B, E.) In 1998, Vanco requested twelve broad categories of records "to protect my interests and the interests of my family." (Dkt. 49-1 Exh. E.) That was not a "proper purpose" under the Business Corporation Act. It was not "specific"—Chicago Flameproof had no way of knowing what about his interests Vanco wanted to protect and which corporate records would help him address that interest. *W. Shore Assocs.*, 645 N.E.2d at 498. He also explicitly did not "seek[] to protect the interest of the corporation," but merely his own. *ICD Publications*, 24 N.E.3d at 922. Although Vanco now claims that the purpose was to value his shares and uncover waste and malfeasance, the exhibit, which controls over the allegations, shows that the written request did not identify those purposes. (Dkt. 49-1 Exh. E); *Massey* v.

*Merrill Lynch & Co.*, 464 F.3d 642, 645 (7th Cir. 2006). The corporation and its officers had no duty to respond to the 1998 request because it did not identify a "proper purpose."

The 2018 request listed two purposes. First, Vanco claimed to need documents to investigate whether Mancini had engaged in any wrongdoing. Investigating fraud and gross mismanagement can be a proper purpose, but the shareholder must assert wrongdoing in good faith, rather than based on speculation and to satisfy the shareholder's curiosity. *Sunlitz Holding Co., W.L.L.* v. *Trading Block Holdings, Inc.*, 17 N.E.3d 715, 720–21, 2014 IL App (1st) 133938 (2014). Though "proof of actual mismanagement or wrongdoing is not necessary," *id.* at 720 (quoting *Weigel*, 373 N.E.2d at 426), in true cases of good faith, the minority shareholder has some concrete evidence that supports a suspicion of wrongdoing. *See, e.g.*, *Weigel*, 373 N.E.2d at 425 (finding good-faith suspicion of mismanagement where corporate employees told plaintiff that defendant officers accepted personal gifts from advertisers instead of payment to corporation, and defendant officer admitted it).

The complaint does not plausibly show that Vanco communicated a good-faith fear of mismanagement. Vanco claimed that Mancini misappropriated Chicago Flameproof's opportunities and diverted them to Northern, another company in which Mancini had an interest. (Dkt. 49-1 Exh. B.) In the same letter, however, Vanco announced his belief that Northern was a subsidiary of Chicago Flameproof. (*Id.*) The assertion that Mancini had inappropriate dealings with either a subsidiary or a competitor, but Vanco did not know which, was speculative and therefore improper. *Logal* v. *Inland Steel Industries, Inc.*, 568 N.E. 152, 155–56, 209 Ill. App. 3d 304 (1991). Moreover, in the context of both his sweeping request for nearly every record Chicago Flameproof produced since 1991 and his threat of litigation, Chicago Flameproof appropriately concluded from context that Vanco did not allege malfeasance in good faith.

14

Second, Vanco claimed that he needed to review records to value his shares, which was a proper purpose. *Weigel*, 373 N.E.2d at 424. Because Vanco showed a proper purpose, he was entitled to "a total examination of all reasonably required books and records of the corporation." *Id.* at 428. The parties dispute what was reasonably required. Chicago Flameproof argues that it satisfied Vanco's request by supplying three years' worth of financial statements and tax returns. Vanco, on the other hand, argues that under *Weigel*, once he showed a proper purpose, he was entitled to review anything and everything he desired. Vanco overreads *Weigel*. In that case, the plaintiff suspected, based on employee reports and the admission of a corporate officer, that officers were accepting payments from advertisers in the form of personal favors instead of corporate revenue. 373 N.E.2d at 428–29. The court found the plaintiff showed a proper purpose yet narrowly ordered the corporation to produce only some of the requested documents. The appellate court reversed and required all documents to be produced, finding that the plaintiff made a "specific demand for designated documents, not a blanket demand for all books and records of the corporation . . . ." *Id.* at 428. Vanco, however, had only one proper purpose— present valuation of shares—yet made essentially a "blanket demand" for nearly every record Chicago Flameproof had produced since 1991, plus the corporate records of Northern and Madison. (Dkt. 49-1 Exh. B.)

The appropriate disclosure lay somewhere between what Vanco requested and what Chicago Flameproof produced. Vanco did not need twenty-seven years' worth of every record Chicago Flameproof kept, plus records of companies of which he was not a shareholder, to determine the present-day value of his shares. (*Id.*) But neither could Vanco value his shares with only the documents Chicago Flameproof provided. At most, Chicago Flameproof gave him a snapshot of the company's worth but did not tell him what percentage of the company he owned.

15

Reviewing the complaint in the light most favorable to Vanco, Chicago Flameproof should have produced at least enough documentation to establish the total amount of outstanding shares in 2018, including any books, records, and minutes showing the issuance of other shares, to help Vanco determine the total number of outstanding shares.

Because Vanco's complaint plausibly claims that he was entitled to review more documents than he was given, Count II must stand. But Vanco has not shown that all named defendants are liable. "Any officer, or agent, or a corporation which shall refuse to allow any shareholder . . . to examine . . . shall be liable to such shareholder, in a penalty of up to ten per cent of the value of the shares owned by such shareholder, in addition to any other damages or remedy afforded him or her by law." 805 Ill. Comp. Stat. 5/7.75(d).[4] Here, the corporation, through its agent, attorney William J. Arendt, denied the request, not Mancini or Rossobillo. Vanco does not plausibly claim that Mancini or Rossobillo are personally responsible for the attorney's response.

Count II is therefore dismissed without prejudice as to Mancini and Rossobillo. The motion to dismiss Count II is denied as to Chicago Flameproof.

### III.      Breach of Fiduciary Duty (Count III)

Vanco claims that Mancini and Rossobillo committed five breaches of fiduciary duty: (1) usurping corporate opportunities by forming and running Northern as a competitor to Chicago Flameproof; (2) preventing Vanco from properly valuing his shares; (3) denying Vanco

---

[4] Even taking the complaint in the light most favorable to Vanco, the gap between what Chicago Flameproof did and should have let Vanco examine is minuscule. Opening more of the books, records, and minutes to Vanco will remedy this issue, and the court is unlikely to award anything more than nominal damages. *Weigel*, 373 N.E.2d at 429 ("[A] trial court may exercise its discretion to reduce the amount of the penalty where it appears that the defendants, in refusing inspection, had been acting in good faith." (quoting *McCormick* v. *Statler Hotels Del. Corp.*, 203 N.E.2d 697, 702, 55 Ill. App. 2d 21 (1964))).

dividends; (4) permitting Madison to purchase shares without transfer restrictions; and (5) hiring Mancini's family members as "phantom employees." He does not allege that Madison did anything wrong and therefore does not oppose Madison's motion to dismiss Count III.

In their memorandum in support of their motion to dismiss, Mancini and Rossobillo respond as follows: (1) no response to the first alleged breach; (2) they did not prevent Vanco from valuing his shares; (3) Vanco never asked for dividends; (4) issuing shares to Madison was not a breach of fiduciary duty; and (5) they did not hire "phantom employees," which in any event is available only as a derivative claim. Mancini and Rossobillo cited no authority in their memorandum. Only in their reply brief did they cite authority and respond to the first alleged breach, answering that Northern was formed so soon after Chicago Flameproof that Chicago Flameproof was not positioned to take Northern's opportunity. Mancini and Rossobillo's failure to cite authority in the original memorandum forfeited their legal arguments. *Beverly* v. *Abbott Labs.*, 817 F.3d 328, 334 (7th Cir. 2016) ("[F]ail[ure] to cite a single case . . . amounts to forfeiture."). They did not cure that failure by citing authority and raising new arguments in their reply brief, when Vanco no longer had an opportunity to respond. *Monco* v. *Zoltek Corp.*, 317 F. Supp. 3d 995, 1001 n.3 (N.D. Ill. 2018) ("[A] reply brief is for replying, not for raising a new ground. In that context the new matter is deemed waived." (citations omitted)). Moreover, some of their arguments—that they did not hire phantom employees, that Vanco never asked for dividends, and that Chicago Flameproof could not have taken Northern's business opportunities—raise facts outside the complaint or deny the facts in the complaint, which are inappropriate for a Rule 12(b)(6) motion, *Active Disposal*, 635 F.3d at 886 (facts presumed true for Rule 12(b)(6) motion).

17

In any event, Vanco states a claim for breach of fiduciary duty. "To establish a breach of fiduciary duty under Illinois law, a plaintiff must show that '(1) a fiduciary duty exists; (2) the fiduciary duty was breached; and (3) the breach proximately caused the injury of which the plaintiff complains.'" *nClosures Inc.* v. *Block & Co.*, 770 F.3d 598, 603 (7th Cir. 2014) (citation omitted). Under Illinois law, Mancini and Rossobillo owed fiduciary duties both as officers and as fellow shareholders in a closely held corporation. *Donovan* v. *Quade*, 830 F. Supp. 2d 460, 496–97 (N.D. Ill. 2011) (citing *Levy* v. *Markal Sales Corp.*, 643 N.E.2d 1206, 1214, 268 Ill. App. 3d 355 (1994) and *Anest* v. *Audino*, 773 N.E.2d 202, 209, 332 Ill. App. 3d 468 (2002)). Mancini and Rossobillo allegedly took Vanco's money in 1991 to start a lumber-treating business in which Vanco would be a minority owner (Chicago Flameproof), yet immediately started a competing lumber-treating business (Northern) in which Vanco would have no interest. Vanco also alleges that Mancini and Rossobillo hired Mancini's family members as "phantom" employees, which the court infers to mean they were paid without performing work for Chicago Flameproof. Both of these violated Mancini and Rossobillo's fiduciary duties as officers and fellow shareholders and decreased the value of Vanco's shares.

Madison's motion to dismiss Count III is granted. Mancini and Rossobillo's motion to dismiss Count III is denied.

## VI.     Breach of Contract (Count IV)

Under Illinois law, which governs (dkt. 49-1 Exh. D § 11(a)), "[t]o bring a successful breach of contract claim . . . a party must show '(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages.'" *nClosures*, 770 F.3d at 601 (citation omitted). Defendants challenge only the breach element.

Vanco states a claim for breach of the Chicago Flameproof bylaws but not the shareholder agreement. Under Illinois law, "[a] corporation's bylaws constitute a contract between the corporation and its shareholders." *Engelen* v. *Barton-Aschman & Assocs.*, No. 86 C 2369, 1987 WL 14681, at *3 (N.D. Ill. Nov. 2, 1987) (citing *Teschner* v. *Chi. Title & Tr. Co.*, 322 N.E.2d 54, 59 Ill. 2d 452 (1974)). The bylaws provide, "An annual meeting of the shareholders shall be held on the second Tuesday in June of each year for the purpose of electing directors and for the transaction of such other business as may come before the meeting." (Dkt. 49-1 Exh. A art. II § 1.) They also require "[w]ritten notice stating the place, date, and hour of the meeting . . . [to] be delivered not less than ten nor more than sixty days before the date of the meeting . . . ." (*Id.* § 4.) Vanco alleges either that Chicago Flameproof did not hold these required meetings or that it did not send notice of the meetings to him. Vanco thus states a claim for breach of the bylaws, a contract between Chicago Flameproof and Vanco. Defendants' only response is that the bylaw was waived, but as explained above, Chicago Flameproof must plead waiver as an affirmative defense. Finally, although the second amended complaint articulates only legal theories based on the shareholder agreement, it alleges enough facts to claim plausibly that Chicago Flameproof breached the bylaws. *Hatmaker*, 619 F.3d at 743 (holding plaintiff need not plead legal theories in complaint).

The same cannot be said of the shareholder agreement. Vanco argues that Mancini, Rossobillo, and Madison breached the shareholder agreement by (1) failing to hold annual shareholder meetings; (2) failing to notify Vanco of shareholder meetings; (3) issuing shares to Madison without giving Chicago Flameproof or Vanco a right of first refusal; (4) transferring shares among themselves and other shareholders without giving Chicago Flameproof or Vanco a right of first refusal; and (5) violating the "spirit of the shareholder agreement" by diluting

19

Vanco's shares. Defendants contend that none of those five actions constitute breaches of the shareholder agreement.

The court must construe the shareholder agreement to determine whether these allegations constitute breaches. "Issues of contract interpretation are ordinarily questions of law for the [c]ourt." *Proin S.A.* v. *LaSalle Bank, N.A.*, 223 F. Supp. 2d 960 (N.D. Ill. 2002) (citing *Bourke* v. *Dun & Broadstreet Corp.*, 159 F.3d 1032, 1036 (7th Cir. 1998)). "[The court's] primary objective in construing a contract is to give effect to the intent of the parties. Illinois follows the objective theory of intent, whereby the court looks first to the written agreement and not to the parties' subjective understandings. . . . Thus, [the court] must not interpret contractual language in a way contrary to the plain, obvious, and generally accepted meaning of its terms." *Hampton* v. *Ford Motor Co.*, 561 F.3d 709, 714 (7th Cir. 2009) (citations omitted).

As to the first and second claimed breaches, the shareholder agreement does not obligate anyone to hold shareholder meetings or notify Vanco of them. At most, the shareholder agreement contemplates that such meetings might occur by dictating how some of the shareholders should vote at annual or special elections of directors. (*E.g.*, dkt- 49-1 Exh. D § 4(a).) As explained above, the bylaws require annual meetings and notice of the meetings, meaning Chicago Flameproof, not Vanco's fellow shareholders, is potentially liable for failing to hold them or notify Vanco of them.

As to the third and fourth categories, the transfer restrictions in the shareholder agreement did not apply to newly issued shares or transfer among current shareholders. The agreement provides, "No shares of the Stock shall be transferred *by a shareholder* to any person or entity *other than a Permitted Transferee* unless such Shareholder" first offered the corporation or other shareholders a chance to purchase the shares. (*Id.* § 3(a) (emphasis added).) The agreement

20

defines "Permitted Transferee" to include "Each of the Shareholders." (*Id.* § 2.) Thus, under the "plain, obvious, and generally accepted meaning of its terms," the shareholder agreement permitted the transactions that Vanco alleges. Issuing new shares to Madison was not a "transfer[] by a shareholder." (*Id.* § 3(a).) Transfers "between former and current shareholders Schude, Janssen's Estate, as well as current shareholders Mancini, Rossobillo, and Madison, LLC" (dkt. 49 ¶ 143(D)) were all made to "Permitted Transferee[s]." (Dkt. 49-1 Exh. D § 3(a).) The shareholder agreement thus did not compel the issuers or transferors to give Vanco a right of first refusal for any of these transactions.

As to the fifth category, there are no anti-dilution provisions in the shareholder agreement. (Dkt. 49-1 Exh. D.) Indeed, Vanco cites none, instead relying on the "spirit of the shareholder agreement." (Dkt. 49 ¶ 143(E).) But contract interpretation is objective, and if there is a "spirit" of an agreement, it must manifest itself in express terms. *Hampton*, 561 F.3d at 714. The court cannot find that the parties intended the shareholder agreement to protect Vanco against dilution because the contract contains no anti-dilution provisions.

Count IV is dismissed with prejudice as to Mancini, Rossobillo, and Madison. Count IV may proceed against Chicago Flameproof as to breach of the bylaws only.

## V.     Derivative Action (Count V)

"In a derivative suit, an individual shareholder seeks to enforce a right that belongs to the corporation." *In re Abbott Labs. Derivative Shareholders Litig.*, 325 F.3d 795, 803 (7th Cir. 2003) (citing *Kamen* v. *Kemper Fin. Servs., Inc.*, 500 U.S. 90, 98–99, 111 S. Ct. 1711 (1991)) Vanco claims that "the acts alleged of Mancini, Rossobillo, and Madison above have damaged Chicago Flameproof[.]" (Dkt. 49 ¶ 144.) As explained above, Madison must be dismissed from Count V because Vanco does not allege that Madison committed any wrongdoing.

Mancini and Rossobillo argue only that Vanco alleges no corporate cause of action. "Often a single series of events gives rise to both direct and derivative litigation." *Bagdon* v. *Bridgestone/Firestone, Inc.*, 916 F.2d 379, 381 (7th Cir. 1990). That is the case here: the alleged breaches of fiduciary duties discussed above harmed both Vanco and Chicago Flameproof. Although Vanco does not explicitly renew Count III's fiduciary-duty legal theory in Count V, he did not have to, because a complaint must plead facts, not legal theories. *Hatmaker*, 619 F.3d at 743. Regardless, Mancini and Rossobillo acknowledge that some of Vanco's factual allegations support a derivative action, stating, "Chicago Flameproof's hiring of 'phantom employees' is not an individual claim but, rather, a derivative claim . . . ." (Dkt. 58 at 10.) They cannot claim not to be on notice of the substance of the derivative claims.

Finally, although Vanco has alleged sufficient facts which, if true, would sustain a claim by Chicago Flameproof against Mancini and Rossobillo for breach of fiduciary duty, he has not complied with the special federal pleading standards for shareholder derivative actions. Under Federal Rule of Civil Procedure 23.1(b),

> The complaint [for a derivative action] must be verified and must:
>
> > (1) allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law;
> >
> > (2) allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack; and
> >
> > (3) state with particularity:
> >
> > > (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and
> > >
> > > (B) the reasons for not obtaining the action or not making the effort.

Fed. R. Civ. Pro. 23.1(b).

Because defendants did not raise the Rule 23.1 pleading standard in their motion to dismiss, the court will not dismiss for failure to comply. Instead, Vanco is ordered to amend his complaint to comply with Rule 23.1. Vanco should bear in mind, however, that verification requires him to "assure[] [the court] that the plaintiff or some other person has investigated the charges and found them to have substance." *Porte* v. *Home Fed. Sav. & Loan Ass'n of Chi.*, 409 F. Supp. 752, 754 (N.D. Ill. 1976). Vanco notes that his claims are "made in good faith, based on the best information available to him," but that he might need to dismiss the derivative claim if discovery disproves the theories he currently pleads on information and belief. (Dkt. 62 ¶ 21.) Vanco may therefore alternatively withdraw this count if he does not believe he can comply with the more stringent pleading standard of Rule 23.1.

Vanco is therefore given until November 9, 2020 to amend his complaint either to meet the pleading requirements of Rule 23.1 or withdraw his derivative claim.

## **ORDER**

Northern's motion to dismiss (dkt. 54) is granted as unopposed. Madison's motion to dismiss (dkt. 53) is granted. Chicago Flameproof's motion to dismiss (dkt. 53) is denied. Mancini and Rossobillo's motion to dismiss (dkt. 57) is granted as to Count II and denied as to all other counts. Vanco shall have until November 9, 2020 to amend the complaint to comply with Rule 23.1 or to withdraw Count V. A status hearing/scheduling conference is set for December 8, 2020. The parties are directed to engage in a sincere effort to resolve this case and report on those discussions at the status hearing.

Date: October 19, 2020

*Joan H. Lefkow*
_____
U.S. District Judge Joan H. Lefkow